IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DIANNA MILLER, | ) CIVIL ACTION 4:13-cv-00914-DCN-TER |
|           Plaintiff, | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
|           Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## PROCEDURAL HISTORY

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Dianna Miller ("Plaintiff" or "Claimant") filed an application for DIB on June 29, 2010, alleging a disability date of April 15, 2009. Her applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on January 31, 2012, before an Administrative Law Judge ("ALJ"). Plaintiff and a vocational expert (VE) testified. The ALJ issued an unfavorable decision on February 23, 2012, finding Plaintiff was not disabled within the meaning of the Act. In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the insured status requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act so as to be insured for such benefits only through September 30, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 15, 2009, through her date last insured of September 30, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant has had the following severe impairments: fibromyalgia/chronic fatigue syndrome; degenerative disc disease of the cervical spine; obstructive sleep apnea; migraines; mild carpel tunnel syndrome; obesity; major depressive disorder; and generalized anxiety/pain disorder (20 CFR 404.1520(c))

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. From April 15, 2009 through the date last insured, the claimant has had the residual functional capacity to perform a range of work activity that: requires no more than a light level of physical exertion; requires no climbing of ladders, ropes or scaffolds, or more than occasional balancing, climbing ramps/stairs, crawling, crouching, kneeling, and stooping; requires no overhead lifting or reaching; requires no more than occasional side to side head movement; requires no more than frequent bilateral handling; avoids concentrated exposure to extreme hot or cold temperatires, vibration, wetness, irritants (such as flumes(sic), odors, dust, gases, and poorly ventilated areas), hazards (e.g. dangerous machinery, unprotected heights);

> involves routine tasks limited to 1-3 step instructions in a low stress environment defined as having only occasional decision making required, only occasional changes in the work setting, and involving no fast-paced production requirements; and involves no more than occasional interaction with the public (20 CFR 404.1567).

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant is appropriately considered an individual "closely approaching advanced age" (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 15, 2009, the alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 16-24).

After the Appeals Council denied her request for review, Plaintiff filed her complaint in this action on April 5, 2013.

## **ANALYSIS**

The Plaintiff was born on October 20, 1959, and was fifty (50) years of age on the alleged onset date. Plaintiff obtained her GED and has past work experience as a care giver. Plaintiff alleges disability since October 1, 2000, due to fibromyalgia/chronic fatigue syndrome; degenerative disc

3

disease of the cervical spine; obstructive sleep apnea; migraines; mild carpel tunnel syndrome; obesity; major depressive disorder; and generalized anxiety/pain disorder. In her brief, Plaintiff argues the ALJ erred as follows:

1. The ALJ erred in finding the claimant is less than credible.

2. The ALJ erred in failing to consider the Plaintiff's inability to afford medical care.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and that substantial evidence supports the determination that Plaintiff was not disabled.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R.

§ 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## ARGUMENTS AND ANALYSIS

### Credibility

Plaintiff contends that the ALJ erred in his credibility assessment when he failed to find Plaintiff's testimony entirely credible in relation to her alleged limitations with regards to persistence, pace, and short term memory. Plaintiff alleges that the ALJ "cherry-picked evidence" and violated public policy in the analysis he provided, which shed light on what supported, as opposed to harmed her claim. Specifically, Plaintiff argues that the ALJ used the fact that she

attempted to return to work against her, used the fact that she accepted unemployment after her job ended against her, and used the fact that she was not prescribed narcotic pain medication against her with out clarifying the circumstances surrounding the reason she was not taking narcotic pain medication. Plaintiff argues that the ALJ erred in failing to consider her inability to afford medical treatment. Specifically, Plaintiff argues that while the ALJ consistently points out that she does not comply with treatment, the ALJ fails to inquire as to why the Plaintiff fails to comply. Plaintiff asserts that she is simply unable to afford appropriate medical care.

Defendant argues the ALJ reasonably discounted Plaintiff's assertions of disabling limitations. Defendant asserts that the ALJ noted that there were factors that undermined Plaintiff's credibility and discussed the nature of her treatment, representations of her ability to work, use of medication, objective medical findings, and range of daily activities. Defendant contends that the Plaintiff is asking the court to re-weigh the evidence to make a new credibility determination. Further, Defendant argues that the ALJ did not err in evaluating Plaintiff's inability to afford medical treatment. Defendant notes the record throughout shows that Plaintiff received extensive medical treatment. Defendant also argues that the Plaintiff admitted that she smokes at least a pack of cigarettes a day, and given the cost of a pack of cigarettes, the question of affordability for medical care is questionable. Lastly, Defendant points out that Plaintiff's representative did not indicate, ask, or suggest that Plaintiff was unable to afford treatment.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed

6

established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. The ALJ set out a summary of Plaintiff's medical records and testimony at the hearing and concluded that her allegations that she is unable to perform all work activity not credible. The ALJ found as follows:

> At the hearing, the claimant testified that she was diagnosed with chronic fatigue syndrome and/or fibromyalgia in 2005. She reported that she is prescribed medication, which makes her sleepy. The claimant also testified that she has neck issues that cause pain, but she had not had surgery. She reported that she has difficulty holding her head down, pushing a vacuum, and picking up her granddaughter. The claimant further testified that she has carpal tunnel syndrome, which affects her ability to write nicely. Additionally, the claimant stated that she had depression and anxiety.
>
> . . .
>
> In that regard, there are factors that undermine the credibility of the claimant's allegations concerning the severity of her impairments and the degree of her limitation. While the claimant alleges debilitating impairments and symptoms, the objective medical evidence does not support the severity of symptoms or degree of limitation alleged, as discussed in more detail below. Further, while the claimant testified to debilitating symptoms, including pain, her treatment was conservative and she was not prescribed any narcotic pain medication through the date last insured. (Exhibits 5E and 9E). Such factors tend to detract from the claimant's credibility as to the severity of her symptoms.
>
> Additionally, the claimant has worked since the alleged onset date, which also detracts from her credibility. The claimant reported that she worked until October 2009 as a caregiver (Exhibit 2E). She testified that she drove to doctor appointments, fixed meals, and

> cleaned seven days a week. (Exhibit 6E). It is unclear why that job ended but after that job, the claimant collected unemployment indicating a possible layoff and implying she was able and ready to work (Exhibit 3D/5). Such work activity after the date of alleged onset, absent any objective medical findings that offer convincing support for her impairment-related claims, tend to diminish her credibility as to her actual symptoms and limitations.

(Tr. 19).

The ALJ went on to discuss the objective medical evidence finding that the record shows a history of pain prior to the alleged onset date but no diagnosis of fibromyalgia. The ALJ noted that Plaintiff underwent a microlumbar disectomy on the right at L5-S1 in May 2005, but resumed working fulltime. The ALJ further discussed the fact that in May 2009, after the alleged onset date, Plaintiff had a physical for a job in foster care and was fully approved for duty, "indicating a normal physical examination." (Tr. 20). The Plaintiff was diagnosed with fibromyalgia, fatigue, and depression after her mother died in June 2009, but in July 2009, she reported she was doing much better and that her problems with generalized pain had resolved. Id. Plaintiff complained of pain and numbness in her fingers and right foot in April 2010, but reported that her generalized pain was again under control at her appointment in May 2010. Id. Plaintiff was referred to a neurosurgeon in May 2010 for complaints of back pain. Id. The neurosurgeon, Dr. Richard Douglas, reported that an MRI imaging from April 2010 did not show a recurrent disc herniation or nerve root compression and an electromyography study revealed mild carpal tunnel syndrome bilaterally but no radiculopathy. Surgical intervention was not recommended for either impairment and Dr. Douglas referred her to pain management. While the ALJ found that the medical evidence revealed a history of migraines, "the evidence since the alleged onset date and through the date last insured shows little complaints or treatment for migraines other than medication, and computed tomography of the brain

in August 2010 showed no intracranial process." Tr. 20. As for her sleep apnea, she was diagnosed with obstructive sleep apnea and was prescribed a C-Pap machine which she reported was helping her sleep more. The ALJ concluded as follows:

> Based on the medical evidence of record through the date last insured, the undersigned finds that the claimant's allegations as to the intensity and limiting effects of her physical impairments are not entirely credible when viewed with the record as a whole. While the claimant was diagnosed with fibromyalgia in May 2009, she has not had any treatment with a rheumatologist; has not had any hospitalizations; she reported that her generalized pain had resolved by January 2010; and she denied any fatigue or weakness and reported her pain was under control May 2010 (Exhibit 2F/2). Further, while the claimant alleges debilitating back pain and carpel tunnel syndrome, she did not have any treatment with a specialist from the alleged onset date until May 2010 when her examination was stable. Although at that time imaging indicated mild carpel tunnel syndrome and degenerative disc disease, surgery was not recommended and she did not need an assistive device to ambulate. Additionally, the record fails to show consistent evidence of complaints of headaches or immobility due to obesity from the alleged onset date to the date last insured. Finally, the undersigned found no physical assessments or permanent limitations assessed in the medical evidence by any treating source. Therefore, the undersigned finds that the medical evidence through the date last insured supports that the claimant is capable of the light work activity prescribed in the residual functional capacity, which fully accommodates her symptoms and limitations, including any fatigue caused by sleep apnea or fibromyalgia.

(Tr. 20-21).

As the Fourth Circuit stated in Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir.1984), "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." It is well settled that a claimant for Social Security benefits should not be "penalized for failing to seek treatment [he] cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir.1986). Social Security Ruling

96–7P expressly addresses the situation where a claimant asserts that he has not pursued medical treatment because of a lack of financial resources. See SSR 96–7P, 1996 WL 374186. In such a situation, the fact finder is admonished from drawing "any inferences about an individual's symptoms and their functional effects" from a failure to pursue medical treatment "without first considering any explanations that the individual may provide ...." Id. at *7.

This case is distinguishable in that Plaintiff did not testify that she was not able to afford treatment. There was no reference by the Plaintiff at the hearing that due to her financial situation, she could not afford prescribed medical treatment. There is nothing in the record to suggest that her lack of funds impeded her medical care in a way that supports a finding of disability. At the hearing, Plaintiff testified that she stopped taking some of her medication because "the medication that I was taking was packing on the pounds, so I stopped the medication and have since dropped, started dropping back down." (Tr. 46). Plaintiff testified that she smokes ten cigarettes a day. (Tr. 48). She also testified that she receives "free health care through Health Access in Clarksburg." (Tr. 50). Plaintiff later testified that there was one medication, Celebrex, that helped her somewhat but that with the side effects of gaining weight and constipation "it wasn't worth taking it". (Tr. 61). Plaintiff testified that when she first went to see Dr. Douglas, he did not want to do surgery at that time because he was not sure that doing the surgery would give her a significant amount of relief. However, she stated that, due to the neck pain becoming worse, Dr. Douglas gave her the option of having surgery which she had opted to have it. (Tr. 64-65). Plaintiff received treatment and numerous imaging including MRIs and CT scans. (Tr. 349-365, 389-394, 400). Further, she testified that Health Access referred her to a specialist who wanted to put her in day therapy but she could not get there because everyone had to work. (Tr. 68-69). At no point during the hearing did Plaintiff

testify that she was not able to receive treatment or medication due to the inability to afford it, but testified to all of the treatment she had received. The court's role is to evaluate whether the ALJ's decision is supported by substantial evidence. The ALJ based his decision on the treatment notes and objective testing results in the record which did not support Plaintiff's allegations of disabling limitations. Accordingly, the ALJ did not err in his decision related to Plaintiff's inability to afford medical treatment.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990). It is not the responsibility of the Court to determine the weight of the evidence. Id. Here, the ALJ's decision is supported by substantial evidence.

**CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

April 30 ,2014  
Florence, South Carolina